IN THE UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| LIU DUAN, | ) |
| | ) |
| Petitioner-Plaintiff, | ) |
| | ) |
| -vs- | ) |
| | ) Civil Action No. 06-1351 |
| | ) |
| DEBRA ZAMBERRY, Officer in Charge, | ) |
| Pittsburgh Sub-Office, U.S. Citizenship and | ) |
| Immigration Services, et al., | ) |
| | ) |
| | ) |
| Defendants. | ) |

AMBROSE, Chief District Judge.

## **OPINION and ORDER OF COURT**

### **SYNOPSIS**

In this civil action, Plaintiff is a Chinese citizen, present in the United States on a non-immigrant visa, who is married to a United States citizen. She alleges that her I-485 application for adjustment of citizenship status has been pending since October 17, 2005. She seeks mandamus, injunctive, and declaratory relief to compel Defendants, an officer of the U.S. Citizenship and Immigration Services ("CIS") and the Attorney General of the United States, to act on her application. In particular, Plaintiff requests, inter alia, that the Court declare unreasonable the delay in processing her application; compel Defendants to immediately take all action necessary to adjudicate her adjustment of status application within thirty days; and compel Defendants to perform their duties, as required by statutes and regulations.

Jurisdiction is premised on the Administrative Procedure Act ("APA"), 5 U.S.C. §§ 555 and 701 et seq., and 28 U.S.C.§§ 1331, 1361, and 2201.

Defendants have moved to dismiss the Complaint pursuant to Fed. R. Civ. P. 12(b)(6) and 12(b)(1), based on lack of subject matter jurisdiction. For the following reasons, Defendants' Motion will be denied.

## I. Applicable Standards

In deciding a motion to dismiss under Fed. R. Civ. P. 12(b)(6), all factual allegations, and all reasonable inferences therefrom, must be accepted as true and viewed in a light most favorable to the plaintiff. Colburn v. Upper Darby Twp., 838 F. 2d 66, 666 (3d Cir. 1988). I will dismiss a complaint only if it appears beyond a reasonable doubt that the plaintiff can prove no set of facts in support of her claim which would entitle her to relief. Conley v. Gibson, 355 U.S. 41, 45, 78 S.Ct. 99, 2 L. Ed. 2d 80 (1957). The defendant bears the burden of demonstrating that no claim exists. Hedges v. United States, 404 F.3d 744, 750 (3d Cir. 2005). When considering a facial attack under Rule 12(b)(1), the applicable standard is the same as that when considering a motion to dismiss for failure to state a claim under Rule 12(b)(6). Petruska v. Gannon Univ., 462 F.3d 294, 299 (3d Cir. 2006).

Defendants present matters outside the pleadings for my consideration. Typically, I would convert the Rule 12(b)(6) Motion into one for summary judgment, and consider it according to Rule 56. The matters thus presented, however, go to factual issues regarding the reasonableness of the length of time taken in processing Plaintiff's application. In contrast, Defendants' Motion rests solely on

2

questions of law regarding my authority, in the first instance, to even consider whether the alleged delay in processing is reasonable.[1]  Therefore, at this time, I need not consider matters outside the pleadings, nor treat the motion pursuant to Fed. R. Civ. P. 56.  Instead, I shall consider the Motion as a facial attack on jurisdiction, under Rule 12(b)(6) standards.  The party seeking to invoke federal jurisdiction bears the burden of demonstrating that jurisdiction is proper.  Vestcom Int'l, Inc. v. Chopra, 114 F. Supp. 2d 292, 297 (D.N.J. 2000).

## II. Defendant's Motion

### 1. IIRIRA Jurisdiction-Stripping Statute

I first address Defendants' contention that the Complaint should be dismissed because the Illegal Immigration Reform and Immigrant Responsibility Act of 1996 ("IIRIRA"), 8 U.S.C. § 1252(a)(2)(B)(ii), divests this Court of jurisdiction.

That Section provides, in pertinent part, that a court is without jurisdiction to review "any...decision or action" "the authority for which is specified under this subchapter to be in the discretion of the Attorney General or the Secretary of Homeland Security...."  Moreover, an alien's status "may be adjusted by the Attorney General, in his discretion and under such regulations as he may prescribe."  Id. at § 1255(a). The IIRARA is to be read narrowly.  Prado v. Reno, 198 F. 3d 286, 290 (1st Cir. 1999).  Further, as a general matter, there is a "strong presumption in favor of

---

[1] Defendants' Brief refers to matters outside the record only once, in support of their contention that they have acted in accordance with their interpretation of the statutory term "action."  Those matters, and Defendants' actions, do not affect my analysis of that term as discussed infra.  Defendants' conduct is irrelevant to whether or not I may, as a matter of statutory language, exercise jurisdiction over this matter.  Accordingly, I consider Defendants' Motion as a facial, rather than a factual attack on the Complaint.

3

judicial review of administrative action." <u>Khan v. United States</u>, 448 F.3d 226, 232 (3d Cir. 2006) (quoting <u>INS v. St. Cyr</u>, 533 U.S. 289, 298, 121 S. Ct. 2271, 150 L. Ed. 2d 347 (2001)).

There is a dearth of authority on point to this issue. Our Court of Appeals, however, has observed that "[t]he jurisdiction stripping language [of Section 1252] applies not to all decisions the Attorney General is entitled to make, but to a narrower category of decisions where Congress has taken the additional step to specify that the sole authority for the action is in the Attorney General's discretion." <u>Alaka v. Attorney General</u>, 456 F.3d 88, 95 (3d Cir. 2006). "To specify," the Court noted, means "to state explicitly or in detail." <u>Khan</u>, 448 F.3d at 233. The statute in question, therefore, must specifically provide the discretionary authority before Section 1252 divests the court of jurisdiction. <u>Id.</u> at 96. In that regard, the <u>Khan</u> court quoted, with approval, the following statement:

> One might mistakenly read § 1252(a)(2)(B)(ii) as stripping us of authority to review any discretionary immigration decision. That reading, however, is incorrect, because 1252(A)(2)(b)(ii) strips us only of jurisdiction to review discretionary authority specified in the statute, The statutory language is uncharacteristically pellucid on this score: it does not allude generally to "discretionary authority" or to "discretionary authority exercised under this statute," but specifically to "authority for which it is specified under this subchapter to be in the discretion of the Attorney General."

<u>Khan</u>, 448 F.3d at 232 (quoting <u>Zhao v. Gonzales</u>, 404 F.3d 295 (5th Cir. 2005)).

The subchapter at issue specifies only that it is within the discretion of the Attorney General to adjust one's status; it does not address, much less specify any

4

discretion associated with, the pace of application processing.  Given the absence of an explicit provision to that effect, the principles enunciated in Khan and Alaka render Section 1252(a)(2)(B)(ii) inapplicable to a claim of adjudicatory delay.  Although the speed of processing may be "discretionary" in the sense that it is determined by choice, and that it rests on various decisions that Defendants may be entitled to make, it is not discretionary in the manner required by the jurisdiction-stripping language of the IIRIRA. This conclusion is consistent with other decisions that have rejected, for other reasons, arguments similar to those now presented by Defendants.  E.g., Valenzuela v. Kehl, No. 3:05-CV-1764-BF, 2006 U.S. Dist. LEXIS 61054, at **19-20 (N.D. Tex. Aug. 23, 2006).

Moreover, even absent this guidance from our Court of Appeals, the reasoning of decisions declining jurisdiction under similar circumstances are unpersuasive.  In particular, I address the decision of Safadi v. Howard, No. 1:06cv1055, 2006 U.S. Dist. LEXIS 92722, (E.D. Va. Dec. 20, 2006), as Defendants rely on that case, and also rely on reasoning similar to that accepted therein.  In that case, the court framed the issue as "whether the term 'action' [as used in the jurisdiction-stripping statute] encompasses the pace at which USCIS processes an adjustment of status application."  Id. at *6.  The court first determined that the word "action," according to the dictionary, includes "an act or series of acts."  Id. at *7.  It held, then, that Section 1252(a)(2)(B)(ii) precludes judicial review of any "act or series of acts, included within the ongoing adjudication process and the pace at which that action proceeds." Id. at *11.

In <u>Safadi</u>, however, the court expressly stated that its decision did not address the existence of jurisdiction in the case of refusal to process an application, or a delay so unreasonable as to be tantamount to a refusal. <u>Id.</u> at *13. This disclaimer, however, raises the question of how an unreasonable delay might not qualify as "action" under the court's analysis, while a reasonable delay unambiguously does constitute "action." In other words, to read the jurisdiction-stripping statute as did the <u>Safadi</u> court would render toothless all timing restraints, including those imposed by the APA and addressed below. Such a result would amount to a grant of permission for inaction, and a purposeful disregard of the potential for abuse thereof, on immigration matters. I will not, therefore, follow the line of reasoning represented by <u>Safadi</u>.[2] Instead, I find that Section 1252(a)(2)(B)(ii) does not divest this Court of jurisdiction over the Plaintiff's claims.

## 2. **Mandamus Relief**

Next, I address Defendants' argument that this Court lacks jurisdiction to

---

[2] Also worth mention is <u>Mustafa v. Pasquarell</u>, No. SA-05-CA-658-XR, 2006 U.S. Dist. LEXIS 8047 (W.D. Tex. Jan. 10, 2006), cited by the <u>Safadi</u> court. <u>Mustafa</u> considered mandamus standards, rather than the jurisdiction-stripping statute at issue. <u>Mustafa</u> was based, in part, on the conclusion that because the governing statute and regulations do not impose a specific time limit, the timing of an adjudication must be considered a matter of discretion. <u>Alaka</u> and its progeny have rendered this reasoning unpersuasive; the absence of language cannot mean the presence of discretion. The <u>Mustafa</u> court also relied on 8 C.F.R. 103.2(b)(18), which permits the withholding of adjudication. The present Defendants do not assert that they have acted pursuant to that Section. In any event, however, action under that Section would still be subject to the reasonableness requirement imposed by the APA. See, e.g.,<u>Gemini Realty, Inc. v. Gonzalez</u>, 6:06-cv-786-Orl-19DAB, 2006 U.S. Dist. LEXIS 74194, at *12 (M.D. Fla. Oct. 11, 2006).

I note, too, that both <u>Safadi</u> and <u>Mustafa</u> involved plaintiffs, either explicitly or by the court's framing of the issue, who sought relief in the nature of immediate adjudication of an adjustment application. In <u>Mustafa</u>, the court specifically found no statutory entitlement to an immediate adjudication. <u>Mustafa</u>, 2006 U.S. Dist. LEXIS 8047 at *14. In contrast, the present Plaintiff seeks an Order compelling Defendants to immediately take all actions necessary to adjudicate her application, rather than to immediately adjudicate the application.

proceed under the Mandamus Act, because there is no clear duty to adjudicate Plaintiff's application within a particular time.

The Mandamus Act vests a district court with jurisdiction over "any action in the nature of mandamus to compel an officer or employee of the United States or any agency thereof to perform a duty owed to the plaintiff." 28 U.S.C. § 1361. The parties agree that a plaintiff seeking mandamus must establish, inter alia, that the defendant has a clear, non-discretionary duty to act.[3] Heckler v. Ringer, 466 U.S. 602, 616-17, 104 S. Ct. 2013, 80 L. Ed. 2d 622 (1984).

In arguing their point, Defendants again cite to their discretion to decide whether to adjust an alien's status –i.e., their discretion to adjudicate the merits of an application for adjustment. The weight of authority, however, supports a finding that Defendants have a non-discretionary duty to process or adjudicate an adjustment application; that duty supports a mandamus action.[4] See, e.g., Haidari v. Frazier, No. 06-3215, 2006 U.S. Dist. LEXIS 89177, at **10-11 (D. Minn. Dec. 8, 2006); Valenzuela, 2006 U.S. Dist. LEXIS 61054, at **19-20; Aboushaban v. Mueller, No. C

---

[3]Other prima facie elements of a mandamus claim are not at issue here. For example, The Supreme Court has stated that "the common-law writ of mandamus, as codified in § 1361, is intended to provide a remedy only if the plaintiff has exhausted all other avenues of relief." Ringer, 466 U.S. at 616. Defendants, however, do not aver that Plaintiff has failed to establish any prerequisites for mandamus other than establishing the duty to act. Therefore – particularly because I find that I may exercise jurisdiction over this matter on other grounds -- I will not address the interplay of the APA and the Mandamus Act in that vein. In other words, at this juncture and based on the parties' contentions, I merely reject Defendants' sole challenge to mandamus, and do not conclusively determine that mandamus is appropriate here.

[4]The idea of permitting mandamus in such circumstances has faced its primary critics within the Second Circuit, and the Southern District of New York in particular. See, e.g., Espin v. Gantner,381 F. Supp. 2d 261 (S.D.N.Y. 2005) All of the cases cited by Defendants on this point are from within that District.

06-1280, 2006 U.S. Dist. LEXIS 81076, at *4 (N.D. Ca. Oct. 24, 2006); Elkhatib v. Bulter, 04-22407-CIV, 2005 U.S. Dist. LEXIS 22858, at *4 (S. D. Fla. June 6, 2005); Yu v. Brown, 36 F. Supp. 2d 922, 928 (D.N.M. 1999); Paunescu v. INS, 76 F. Supp. 2d 896, 901 (N.D. Ill. 1999). Accordingly, I will not decline to exercise jurisdiction over Plaintiff's mandamus claim based on Defendants' lack of duty.

### 3. APA

Finally, I address Defendants' argument that I cannot exercise jurisdiction based on the APA and the federal question statute.

The APA authorizes suit by a "person suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action within the meaning of a relevant statute," and permits a court to "compel agency action unlawfully withheld or unreasonably delayed." 5 U.S.C. §§ 702, 706. The APA further defines agency action to include a failure to act. Id. at § 551(13). The APA also requires that "with due regard for the convenience and necessity of the parties or their representatives and within a reasonable time, each agency shall proceed to conclude a matter presented to it." Id. at § 555(b). It does not, however, entitle an aggrieved party to judicial review if the action in question is "committed to agency discretion by law." Id. at § 701(a)(2).

Defendants raise two arguments against the exercise of APA-based jurisdiction. For reasons previously discussed, I reject the argument that their discretion regarding the outcome of an adjustment application – versus the timing

of its processing -- precludes judicial review here. They also contend, however, that because no statutes or regulations provide a meaningful standard against which to measure the adjudicatory process, judicial review is unavailable. As courts routinely assess the "reasonableness" of the pace of agency action under the APA, however, this limitation acts as a meaningful standard against which to judge Defendants' conduct. "[W]hen an agency is required to act -- either by organic statute or by the APA -- within [a]...reasonable time, § 706 [of the APA] leaves in the courts the discretion to decide whether agency delay is unreasonable." Forest Guardians v. Babbitt, 174 F.3d 1178, 1190 (10th Cir. 1998).

On this subject, therefore, I am persuaded by those courts that have found the exercise of jurisdiction proper, and "[t]his Court now joins the majority and holds that jurisdiction is proper under the APA and 28 U.S.C. § 1331 to compel the INS to adjudicate an application for adjustment to permanent status." See, e.g., Hu v. Reno, No. 3-99-CV-1136, 2000 U.S. Dist. LEXIS 5030, at **9-10 (N.D. Tex. Apr. 18, 2000) (collecting cases). Therefore, I will not dismiss Plaintiff's Complaint for lack of jurisdiction on those grounds.

## CONCLUSION

Delays of the sort alleged here may, indeed, be "inevitable and becoming more frequent in light of heightened security concerns in the post-911 world." Mustafa, 2006 U.S. Dist. LEXIS 8047, at **15-17. Just as we must be vigilant about security, however, we must also be vigilant against the undue narrowing of access to our courts in the name of that same security. The inevitability or necessity of

processing delays does not require that the courts, without clear legislative direction, act to propagate those delays. Indeed, although the year-and-a-half delay before me might not present such a case, the danger posed by non-reviewability is the "unfettered discretion to relegate aliens to a state of 'limbo,' leaving them to languish there indefinitely." Kim v. Ashcroft, 340 F. Supp. 2d 384, 393 (S.D.N.Y. 2004). It is not within my province to read such discretion into, or out of, the pertinent statutes.

Under applicable standards, it does not appear beyond a reasonable doubt that the Plaintiff can prove no set of facts in support of her claim which would entitle her to relief. For the foregoing reasons, therefore, Defendants' Motion will be denied.

An appropriate Order follows.

* * * * * * * * * * * * * * * * * * * * * * * *

### ORDER

AND NOW, this **23rd** day of February, 2007, after careful consideration, it is ORDERED that Defendant's Motion to Dismiss [Docket No. 13] is DENIED.

BY THE COURT:


/S/   Donetta W. Ambrose

Donetta W. Ambrose,
Chief U.S. District Judge

10